IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIK WILLIAM DE RISO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 2:22-cv-00384-MHT-KFP |
| | * | (WO) |
| CITY OF ECLECTIC; | * | |
| POLICE CHIEF ROBERT HEAD, | * | |
| Personally, and in his | * | |
| Official capacity as Chief of | * | |
| Police for the Town of | * | |
| Eclectic, Alabama; and | * | |
| OFFICER ANTONIO BROWN, | * | |
| personally and in his | * | |
| Official capacity as a | * | |
| police officer for the Town | * | |
| of Eclectic, Alabama, | * | |
| | * | |
| Defendants. | * | |

## <u>ORDER ON PRETRIAL HEARING</u>

A pretrial hearing was held in this case on December 7, 2023,

wherein the following proceedings were held and actions taken:

1. <u>PARTIES AND TRIAL COUNSEL</u>:

John Norris, attorney for Plaintiff Erik William De Riso.

Rick Howard and Ashley Britton, attorneys for Defendants Town

of Eclectic, Police Chief Robert Head, and Officer Antonio

Brown.


<u>COUNSEL APPEARING AT PRETRIAL HEARING</u>:

John Norris and Rick Howard.

2.   <u>JURISDICTION AND VENUE</u>:

The parties do not contest the jurisdiction and venue of the pending claims in this action.   Jurisdiction in this Court is proper pursuant to 28 USC § 1331, in that it involves a federal question. Venue in this District is proper pursuant to 28 USC § 1391(a) in that all defendants are residents of the Middle District of Alabama, and the causes of action arose in this District.

3.   <u>PLEADINGS</u>:    The following pleadings and amendments were allowed:

Complaint

Answer

4.   <u>CONTENTIONS OF THE PARTIES</u>:

<u>Plaintiff</u>:

On July 13, 2021, at 8:40 pm, the Plaintiff, was walking the streets of Electric Alabama and videoing "B" footage for his YouTube channel. (see Exhibits 1 and 4 at time stamp 17:33) Police were called and Officer Brown responded to the call. The Plaintiff was charged by the City of Eclectic for Obstructing Governmental Operations, in violation of City Ordinance 46, which embraces 13A-10-2, Code of Alabama, 1975. The Plaintiff was convicted in City Court and appealed to the Circuit Court of Elmore County for a

2

Jury Trial.

On April 12, 2022, a jury was empaneled and trial began. During the trial, Officer Brown was questioned regarding the Plaintiff's action.  Some of the questions and answer from the Officer Brown are as follows:

**BY MR. NORRIS:**
**(EXHIBIT 3)**

7   Q. Officer Brown, how long have you been a police

8   officer?

9   A. For four and a half years I believe.

10   Q. Okay. And what is the reason again you stated you

11   arrested my client? What is the reason you

12   arrested my client?

13   A. He would not identify himself.

14   Q. Okay. But that's not the charge that you signed

**(EXHIBIT 3:  PAGE 40, LINES 7-14)**

1   Q. Okay. Well, did anybody sign any harassment

2   warrants?

3   A. Not that I know of.

4   Q. Okay. Did anybody sign any criminal trespassing on

5   him?

6   A. Not that I know of.

7   Q. Okay. So the only reason you arrested him is

3

8    because he refused to give his name?

9    A. Correct.

     **(EXHIBIT 3:  PAGE 41, LINES 1-9)**

9    Q. So tell me, Officer Brown, how was Mr. De Riso

10   intimidating you?

11   A. He wasn't intimidating me. Interference with my

12   investigation, sir.

13   Q. If you will just listen to the question and only

14   answer the question, we can get through this a lot

15   quicker, sir. Okay?

16   A. Yes, sir.

17   Q. Okay. So he wasn't intimidating you, correct?

18   A. No, sir.

19   Q. Okay. And I believe you already stated on direct

20   that there was absolutely nothing physical that he

21   did?

22   A. No, sir.

     **(EXHIBIT 3:  PAGE 43, LINES 9-22)**

3    Q. Okay. So there was no, as you like to say, other

4    independently unlawful act; is that correct?

5    A. Correct.

6    Q. So would it be fair to say that Mr. De Riso just

                                4

7    refused to give you his name?

8    A. He did. It interfered in my operation of –

9    Q. What crime were you investigating?

10   A. Suspicious person.

11   Q. All right. Give me the Code section for a crime of

12   suspicious person?

13   A. I don't know the Code number.

14   Q. Pardon?

15   A. I don't know the number.

16   Q. All right. Give the range of punishment for a

17   suspicious person?

18   A. I don't know.

19   Q. Have you ever charged anybody with just being a

20   suspicious person before?

21   A. No, I haven't.

22   Q. Okay. Do you know of any officer that has charged

23   somebody with just being a suspicious person?

24   A. I can't answer that question because I don't know.

     **(EXHIBIT 3:   PAGE 44, LINES 3-24)**

3    Q. Okay. That's fine. When you went through the

4    police academy did they educate you on Criminal

5    Code?

6   A. Yes, sir.

7   Q. Okay. Do you recall anywhere in the Criminal Code

8   that you can be charged with being a suspicious

9   person?

10  A. I can't recall that.

11  Q. Okay. Now, was Mr. De Riso in a public place?

12  A. At that time when I came in contact with him, yes.

13  Q. Okay. And to your knowledge, in July 2021 was

14  there any restrictions or curfews initiated by the

15  City of Eclectic not to be out in the public?

16  A. Not that I'm aware of.

17  Q. Okay. So there's no law that Mr. De Riso violated

18  there by being in a public place?

19  A. Not that I'm aware of.

   **(EXHIBIT 3:   PAGE 45, LINES 3-19)**

3   A. I charged him with obstructing governmental

4   operation.

5   Q. Because he wouldn't give you his name?

6   A. Correct.

7   Q. Okay. And let me ask you again, just so everybody

8   is crystal clear on this, was he intimidating,

9   intimidating you?

10   A. No.

11   Q. Did he use any kind of physical force on you?

12   A. No.

13   Q. Okay. Was there any other independently unlawful

14   act that he did?

15   A. No, just interference.

16   Q. You're hanging your hat on the interference?

17   A. No, sir, he did not.

18   Q. Okay. Now, when you arrested him for obstructing

19   governmental operations, you filled out all of your

20   paperwork, correct?

21   A. Correct.

22   Q. Okay. Did he give you his name?

23   A. Well, he gave the jail staff his name when we got

24   to the jail.

   (EXHIBIT 3:   PAGE 49, LINES 3-21)

7   Q. So 15-5-30 is not in the Criminal Code, correct?

8   A. Correct.

9   Q. So a person cannot be charged for not giving his

10   name?

11   A. Sir, I was dispatched out there.

12   Q. Pardon?

13   A. I was dispatched to that call.

14   Q. Sir, I'm asking the question. Can a person –

15   A. No.

16   Q. -- be charged for not giving his name?

17   A. No.

18   Q. I'm sorry?

19   A. No.

20   Q. You're going to have to speak up louder.

21   A. No.

   (EXHIBIT 3:   PAGE 51, LINES 7-21)

2    THE COURT: When you were dispatched out to the

3    scene, y'all cited 15-5-30, you said you were –

4    why did you go out there?

5    A. Why did I –

6    THE COURT: Why did you go out there?

7    A. I was dispatched because they had a suspicious

8    person walking through town videoing.

9    THE COURT: So what were you investigating him

10   for?

11   A. To see what was he doing in town, what was his

12   reason for videoing and, of course, to see who he

13   was. Because I patrol that town every night,

8

14    Judge, and –

15    THE COURT: Was there any kind of potential

16    criminal offense you were investigating him for or

17    were you just trying to see who he was?

18    A. Trying to see who he was.

19    THE COURT: Okay.

**(EXHIBIT 3:  PAGE 52, LINES 2-19)**

Further Officer Brown in his deposition in this case, Exhibit 2, confirmed that his testimony from the criminal case was true and correct, to-wit:

13    Q. Okay. Do you recall that at the criminal

14    trial, your -- any of your testimony?

15    A. I don't recall.

16    Q. Okay. You did testify truthfully there,

17    didn't you?

18    A. Yes, sir, I did.

19    Q. Okay. And those were the facts that –

20    A. Yes, sir.

21    Q. Just let me finish asking the question.

22    Those were the facts that you saw

23    that night that you arrested Mr. De Riso?

**(EXHIBIT 2:  PAGE 15, LINES 13-23)**

1    A. That I saw for myself?

2    Q. Yes.

3    A. Yes, sir.

   **(EXHIBIT 2:  PAGE 16, LINES 1-3)**

4    Q. Okay. Is it your opinion that the

5    criminal trial testimony is the best

6    evidence regarding what happened that

7    night?

8    A. On my video?

9    Q. On your video and your testimony at the

10   criminal trial

11   A. Yes. From when I got there, yes, sir.

12   Q. Yeah.

13   A. Yes, sir.

14   Q. Just give me a second here.

15   (Brief pause)

16   Q. Officer Brown, I'm going to show you what

17   I've marked as Plaintiff's #2. And I'll

18   tell you -- or represent to you that that

19   is a transcript of the criminal trial,

20   your testimony. Would you agree that

21   that's your testimony? And you can take

22    the time and read everything, if you want

23    to.

      **(EXHIBIT 2:   PAGE 17, LINES 4-23)**

2     MR. NORRIS: Do you want to

3     take a break and let him...

4     MR. HOWARD: Yeah. If you

5     want to ask him questions about

6     it, he needs to review it. I

7     think we can authenticate it,

8     but if you're asking questions

9     about what he said at trial, he

10    needs to probably look at it.

11    MR. NORRIS: Well, actually,

12    what I was going to do, Rick, is

13    save my mouth and some

14    questioning by just saying there

15    it is, he's already testified

16    that that was –

17    MR. HOWARD: Well, yes, if

18    that's –

19    MR. NORRIS: That's all I

20    was going to do it is introduce

21    it.

22    MR. HOWARD: Okay. That's no problem. We will stipulate

      **(EXHIBIT 2:  PAGE 18, LINES 2-22)**

1     that that's his trial testimony.

2     MR. NORRIS: Okay. That's

3     all I was trying to do.

4     MR. HOWARD: Okay.

5     MR. NORRIS: Because to be

6     honest with you, like I said, it

7     saves me a lot of questions.

8     MR. HOWARD: Yeah. You've

9     already taken his deposition

10    once -- or Geraldine has.

11    Yeah, we'll stipulate

12    that #2 is his testimony.

   **(EXHIBIT 2:  PAGE 19, LINES 1-12)**

The Plaintiff's first contact with Officer Brown can be found on **Exhibit 4** at time stamp 18:01, in which the Plaintiff again states he was there filming. On **Exhibit 4** at time stamp 18:40, Officer Brown states that he was not being detained.  Through the Plaintiff's interaction with Officer Brown, he asked what crime he committed and was he under arrest. Furthermore, on **Exhibit 4** at

12

time stamp 21:48, the Plaintiff asked Officer Brown if he had the right to privacy, in which, Officer Brown stated no. **Exhibit 4** at time stamped 21:55, Officer Brown arrested the Plaintiff.

When the Plaintiff was asked in his deposition with regards to the arrest by Officer Brown, the exchange is as follows:

3    Q. Do you know why he arrested you?

4    A. Because I didn't tell him my name.

5    Q. Do you think you had a duty to tell him your

6    name?

7    A. No.

8    Q. Why not?

9    A. It's the Fourth Amendment.

10   Q. Have you ever read Alabama Code 15-5-30?

11   A. Yes, sir.

12   Q. Do you know what it says?

13   A. Any acting duty officer may demand the name of a

14   person he suspects is committing, has committed,

15   or will commit a crime.

    **(EXHIBIT 1:  PAGE 20, LINES 3-15)**

It is undisputed that the Plaintiff was only arrested because he exercised his Constitutional rights under the 1st, 4th and 5th amendments.

13

<u>Defendants</u>:

On the evening of Monday, July 12, 2021, Plaintiff had an altercation with his wife, then drove to downtown Eclectic "to cool down" and "get some content" for his YouTube Channel, which Plaintiff uses to profit off of "First Amendment constitutional audits." Plaintiff videoed inside the windows of several closed businesses. Plaintiff attempted to video through the closed blinds and drawn curtains of stores and crossed the private entries of various closed stores to film inside them. Plaintiff also filmed employees and patrons of a restaurant, Down Home Bar and Grill, which was in the process of closing for the evening.

Employees and customers of the restaurant observed Plaintiff walking up and down the street late at night, filming inside the windows of closed businesses, and entering private property. When witnesses asked Plaintiff what he was doing, he gave three different explanations; all of which were lies. An employee contacted dispatch and requested an officer.

Officer Brown, who has been a certified law enforcement officer since 2017 and has worked for the Eclectic Police Department since that time, was dispatched to the scene to investigate reports of a "suspicious" person walking around downtown Eclectic late at night and filming inside multiple closed

14

businesses. Several witnesses expressed concern, based on their observations of Plaintiff's "suspicious" behavior, that Plaintiff may be "casing out" the area to commit a burglary.

When Officer Brown arrived at the scene, he made contact with Plaintiff and explained that he had been informed that Plaintiff was interfering with private property and businesses.  Officer Brown asked Plaintiff what he was doing, who he was, and where he was from numerous times.  Plaintiff lied to Officer Brown that he was filming "a little advertisement" for the Town.  The only identifying information Plaintiff provided to Officer Brown was that the officer could call him "boss."

Based on the totality of the undisputed facts in this case, Officer Brown reasonably believed that Plaintiff had committed (e.g., trespass) or was about to commit (e.g., burglary) a crime. Accordingly, Officer Brown had authority to ask for Plaintiff's name and address, and Plaintiff had a duty to provide this information pursuant to Ala. Code §15-5-30.  Following multiple failed attempts to obtain Plaintiff's name, Officer Brown arrested Plaintiff for obstructing governmental operations pursuant to Ala. Code §13A-10-2, as he could not continue his investigation without the Plaintiff providing his name.

Plaintiff admits that he intentionally failed to comply with Officer Brown's simple requests for his name and address. But for Plaintiff's refusal to provide his name to Officer Brown, he would not have been arrested. Plaintiff's continued refusal to identify himself violated Alabama law and was an "independently unlawful act" under Ala. Code §13A-10-2.

Plaintiff was transported to jail without incident. Plaintiff claims that he was "booked into jail without his phone," and was told by an unidentified officer that the arresting officer had taken the phone home for investigation. There is no evidence that Officer Brown took Plaintiff's phone home or looked through his phone following the arrest. Plaintiff admits that he retrieved his phone from the Eclectic Police Department the following day, and that it was not broken. Plaintiff was tried and found guilty of obstructing governmental operations in the municipal court of Eclectic, Alabama, Judge Guy Holton presiding. Plaintiff was sentenced to spend 15 days in jail and ordered to pay $810.00 in fines. Plaintiff appealed his conviction to the Circuit Court of Elmore County, Judge Bill Lewis presiding. Plaintiff was ultimately acquitted for reasons other than a lack of probable cause for the arrest. In fact, Judge Lewis agreed that Plaintiff did not have a right to go "around snooping in peoples'

16

businesses," and Officer Brown was "absolutely right" in arresting Plaintiff, as "there are a number of criminal offenses [Officer Brown] can investigate [Plaintiff] for," such as trespass or potential burglary.

On June 28, 2022, Plaintiff filed this lawsuit against the Town of Eclectic, Police Chief Robert Head, and Officer Antonio Brown, pursuant to 42 U.S.C. §1983, alleging that Officer Brown illegally arrested Plaintiff and seized and searched his cell phone following the arrest.  The Complaint asserts violations of the First, Fourth, Fifth, and Fourteenth Amendments against Officer Brown and a simple "negligence" claim against Chief Head and the Town of Eclectic.  However, it appears that Plaintiff intended to assert claims of unlawful policy or custom and failure to train and supervise against Chief Head and the Town, rather than a simple negligence claim, which is not a viable cause of action under 42 U.S.C. §1983. Plaintiff has not shown and cannot show that the arrest was unlawful. Officer Brown had arguable, if not actual, probable cause to arrest Plaintiff.  Plaintiff's constitutional rights were not violated and, therefore, the Defendants are entitled to judgment as a matter of law.

5.  STIPULATIONS BY AND BETWEEN THE PARTIES:

The parties stipulate to the fact that the plaintiff was

arrested by Defendant Antonio Brown on the evening of Monday, July 12, 2021, in downtown Eclectic, Alabama.

**\*\*\***

**It is ORDERED that:**

**(1)  The jury selection and trial of this cause, which is to last one and a half days, are set for February 5, 2024, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;**

**(2)  A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;**

**(3)  Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;**

**(4)  Trial briefs ((a) summarizing the evidence to be**

presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing any evidentiary issues that may arise at trial) are required to be filed 10 days before the trial date;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. 13) entered by the court on August 12, 2023; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 7th day of December, 2023.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE